

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00537-CR

NGHIA TRUNG NGUYEN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 23,329-B, Honorable John B. Board, Presiding

February 28, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Nghia Trung Nguyen, appeals his conviction for the offense of aggravated robbery[1] with an affirmative finding of a deadly weapon and the subsequent sentence of confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for 75 years. Appellant contends that he was denied effective assistance of counsel. Disagreeing with appellant, we will affirm.

---

[1] See TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011).

Factual and Procedural Background

Appellant entered an open plea of guilty to the indicted offense of aggravated robbery. It is helpful to understand that, prior to entering his open plea of guilty, appellant rejected two proposed plea offers from the State. Each of these offers would have required appellant to be sentenced to either eight years or five years in the ID-TDCJ. Appellant was intent upon receiving a deferred adjudication and this was his stated reason for turning down the State's offers.

Appellant orally entered a plea of guilty before the trial court in which appellant asserted he was pleading guilty only because he was guilty. The trial court proceeded to inquire if the decision to plead guilty was one made by appellant and not because of any promises made to him or any threats or force used against him. The trial court then inquired about appellant's ability to think clearly. Likewise, the trial court asked appellant if he had ever been found mentally incompetent, to which appellant answered negatively. Proceeding forward, the trial court inquired whether appellant was a citizen of the United States. At this juncture, the trial court advised that he found appellant mentally competent and a citizen of the United States. The trial court then asked the following question of appellant:

> Do you understand that when there is not a recommendation to me that what I'll do is just hear evidence and testimony that the State wants to present, and then I'll make a determination as to what to do with regard to your plea of guilty.

Following this discussion, the trial court went over the documents that appellant signed in connection with the plea of guilty. Specifically, the judge inquired generally whether appellant had read the paperwork that he had signed. Likewise, the judge

2

asked if appellant understood what he signed, if he had any questions about any of this and, whether his counsel was able to answer them. Appellant answered in the affirmative.

The trial court then inquired about the judicial confession that appellant signed by asking appellant if he understood that "by signing that in front of a notary you were swearing that you were guilty." Appellant responded by saying "Yes, sir." Appellant then was asked if he understood he was giving up, "with regard to guilt or innocence," the right to a jury trial. Again, appellant responded yes. At this stage of the proceeding, the trial court first made inquiry regarding any issue concerning punishment by asking appellant if he understood that he was also giving up his right to a jury trial on the issue of punishment. Appellant stated he understood that.

In addition to these oral admonishments and warnings, appellant signed a document denoted as a "FELONY PLEA MEMORANDUM." Contained therein were statements that appellant understood that the punishment range was from 5 to 99 years or life in prison and a fine up to $10,000. Also contained therein was the statement that there was no plea agreement between appellant and the State. Additionally, there is the written statement that appellant is giving up his right to a trial by jury in the memorandum. Appellant, along with his counsel, signed this document.

Below the above referenced waivers, there is contained the written waiver of appellant's rights of confrontation of witnesses and stipulation of evidence. By the stipulation of evidence, appellant agrees the State may use oral stipulations or affidavits

in lieu of testimony.  This waiver, like its predecessor, was signed by both appellant and his counsel.

Additional waivers, not germane to this appeal, are also contained in this memorandum document.  However, the next portion that is important to our discussion of the issues is the judicial confession.  Appellant judicially confessed "to committing the offense of Agg. Robbery w/dw [sic] exactly as charged in the indictment."  Below that judicial confession, there is appellant's written plea of guilty to the above specified offense and plea of true to the special allegation of exhibition of a deadly weapon.

The next paragraph of this memorandum contains a statement that "[appellant] understands the warnings and information set out above and is aware of the consequences of this plea."  Appellant swore to this statement before a notary public.

Appellant then signed below a paragraph entitled "Defendant's Statement on Admonishments" wherein appellant reaffirmed all of the admonishments previously given to him by the court, including statements regarding his competency and awareness regarding the consequences of a plea.

The trial court then stated that it accepted and approved the admonishments, waivers, and judicial confession.  The trial court then announced "I will withhold my judgment until such time as I've heard all the evidence and testimony."

The trial court then heard 103 pages of testimony regarding all aspects of the commission of the offense and appellant's criminal history.  Contained within this record is appellant's testimony.  Appellant's testimony was, to say the least, not helpful to his

4

request for deferred adjudication. At the conclusion of the testimony, the trial court stated as follows:

> Okay. Well, based on the evidence and testimony before the Court I do accept [appellant's] plea of guilty. I do find the evidence is sufficient to sustain a finding of guilt.

The trial court then proceeded to sentence appellant to confinement in the ID-TDCJ for 75 years.

Appellant appeals the judgment sentencing him to prison, contending that he received ineffective assistance of counsel because his counsel did not inform him that he had the right to withdraw his plea after his testimony went poorly. Additionally, should the Court find that the record is insufficient to permit us to determine the effectiveness of counsel, appellant requests that we remand for a hearing on appellant's motion for new trial regarding the question of the effectiveness of counsel. We will overrule appellant's issue.

## Standard of Review

The United States Constitution's guarantee of the right to counsel encompasses the right to effective assistance of counsel. U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, Texas courts apply the two-pronged test enunciated in *Strickland*, 466 U.S. at 687. *See Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (en banc). Judicial review of an ineffective assistance of counsel claim must be highly deferential, and there is a strong presumption that trial counsel's conduct fell

5

within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. An appellant claiming ineffective assistance of counsel bears the burden of proving by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the appellant. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Failure to make the required showing of either deficient performance or sufficient prejudice is fatal to an ineffectiveness claim. *See id.*

The "right to effective assistance of counsel merely ensures the right to reasonably effective [not perfect] assistance." *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (quoting *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (en banc)). This right does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight. *See Ingham*, 679 S.W.2d at 509. "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *Robertson*, 187 S.W.3d at 483 (quoting *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992) (en banc)). Counsel's performance is judged by "the totality of the representation," and "judicial scrutiny of counsel's performance must be highly deferential" with every effort made to eliminate the distorting effects of hindsight. *Id.* The *Strickland* Court cautioned us to avoid an intrusive post-trial inquiry into attorney performance because such an inquiry would encourage the proliferation of ineffectiveness challenges. *Id.* (citing *Strickland*, 466 U.S. at 690).

To that end, we are instructed that, in order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record. *Lopez*, 343 S.W.3d at 142. The court further advises, "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id.* at 143.

Analysis

Appellant's claim of ineffective assistance of counsel is grounded on the proposition that, after appellant's testimony was bad during the taking of evidence, he had a right to withdraw his plea of guilty. As the theory goes, since his trial counsel did not advise appellant of this right, then trial counsel was ineffective. Therefore, we must review the law regarding withdrawal of a plea of guilty to ascertain, first, whether appellant had the unfettered right to withdraw his plea of guilty and, second, should we reach the issue, whether trial counsel's action, in failing to advise appellant of the right to withdraw his plea, was so deficient as to be considered ineffective.

Turning to the first part of the inquiry, we begin by noting that, Texas has historically had a liberal practice concerning the withdrawal of a guilty plea. *See Jackson v. State,* 590 S.W.2d 514, 515 (Tex. Crim. App. [Panel Op.] 1979). In fact, a defendant has the right to withdraw his guilty plea without assigning any reason to the action until judgment has been pronounced or the case has been taken under advisement. *See id.* The corollary to the above statement is, once the case has been taken under advisement or judgment is pronounced, the decision to allow a defendant to withdraw his plea is left to the sound discretion of the trial court. *See id.*

7

Our review of the record reveals that the trial court waited to pronounce judgment of guilt until after it had heard all of the punishment evidence. Therefore, unless the trial court took the matter under advisement prior to the pronouncement of guilt, appellant had the right to withdraw his plea. *See Murray v. State*, 302 S.W.3d 874, 883 (Tex. Crim. App. 2009). We now move to consider whether the trial court took this matter under advisement prior to the time that it pronounced judgment.

The record before the Court clearly shows that the trial court went from going through the admonishments and warnings necessary to receive a plea of guilty to review of the documents executed by appellant to support a plea of guilty and, finally, to receipt of evidence necessary to determine the question of punishment. This type of process must be examined closely to determine if we, as the appellate court, can say that at any particular point the trial court took the case under advisement.

We first turn our attention to the fact pattern. As outlined in a previous section of this opinion, the trial court went through extensive questions of appellant about whether it was his desire to enter a plea of guilty, whether he had been forced or coerced into entering such a plea, and whether he understood what he was doing and had the mental capacity to enter a plea of guilty. Appellant, at each step, reasserted he knew what he was doing and desired to enter the plea in question. Following these questions, appellant was advised by the trial court that there was "not a recommendation," which, under the facts, can only mean no recommendation as to the punishment issue. The trial court then advised that it would hear the evidence that the State wanted to present and make a determination as what to do "with regard to your plea of guilty."

8

Next, the trial court went through each of the written waivers and admonishments contained within the "Felony Plea Memorandum." This document included all of the admonishments contained in the Texas Code of Criminal Procedure article 26.13. *See* TEX. CRIM. PROC. CODE ANN. art. 26.13 (West Supp. 2013). Additionally, the "Felony Plea Memorandum" contained a written waiver of trial by jury and plea of guilty to the indictment and true to the deadly weapon allegation. Following the discussion regarding the "Felony Plea Memorandum," the trial court entered written orders accepting all of the waivers appellant had signed and found that appellant had freely and voluntarily entered into the plea agreement, was in his right mind, and understood what he was doing. At this juncture of the proceeding, the trial court proceeded to entertain the evidence on the issue of punishment.

After this review of the record, we arrive at the conclusion that the trial court took the matter under advisement prior to hearing the evidence on the issue of punishment, just as the trial court had advised appellant that it would do. *See Scott v. State*, 860 S.W.2d 645, 646 (Tex. App.—Dallas 1993, no pet.) (holding that a court is deemed to have taken a case under advisement after each side concluded presentation of evidence on the subject of guilt, the defendant's guilt has been established, and the only issue remaining is appropriate punishment); *see also Perez v. State*, Nos. 05-11-00297-CR, 05-11-00298-CR, 05-11-00299-CR, 05-11-01554-CR, 2012 Tex. App. LEXIS 4973, at *6-8 (Tex. App.—Dallas June 21, 2012, no pet.) (not designated for publication). In reaching this conclusion, *Scott* relies on *Wissinger v. State*, 702 S.W.2d 261, 262 (Tex. App.—Houston [1st Dist.] 1985, pet. ref'd), for the proposition that there is no requirement that there be a finding of guilt before a case is considered to have been

taken under advisement. We agree with this conclusion, as applied to the facts of the case before us. The trial court had completed actions required to entertain a plea of guilty and there was nothing left except to determine what the punishment would be. *See Scott*, 860 S.W.2d at 646. Accordingly, we find that, because the trial court had taken the case under advisement, appellant had no unqualified right to withdraw his plea of guilty. *See Murray*, 302 S.W.3d at 883. Further, since appellant had no right to withdraw his plea of guilty, the failure of trial counsel to so advise him would not be an act of ineffective assistance of counsel because the same would not have been a deficient performance of his duties. *See Lopez*, 343 S.W.3d at 142. Appellant's first issue is overruled. Because we overrule appellant's first issue, we do not reach his second issue. *See* TEX. R. APP. P. 47.1.

## Conclusion

Having overruled appellant's issue contending his trial counsel was ineffective, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.