

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00013-CR

_____

BILLY JOE HERNANDEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1215541D

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

# OPINION

Billy Joe Hernandez and Rogelio Marquez got into a fight while at a Tarrant County[1] Church's Chicken restaurant. During the altercation, Hernandez struck Marquez with a chair, shattering bones in Marquez' elbow. Hernandez was indicted on one count of assault causing serious bodily injury.

At a July 12, 2013, hearing, Hernandez entered into a plea agreement wherein he would receive a sentence of five years' incarceration with the stipulation that no punishment hearing would be held until August 19, 2013. The parties understood that if Hernandez did not appear on the August 19 date, the plea would stand as an open plea, but the State would not be bound to the plea agreement.[2] Hernandez failed to appear at the time set for sentencing as he had promised and, in fact, was re-arrested. The punishment hearing eventually took place November 21, 2013.

After Hernandez heard Marquez' testimony during the punishment hearing, Hernandez attempted to withdraw his guilty plea, arguing that Marquez' testimony as to the degree he was injured during the fight was "newly discovered evidence." In other words, Hernandez argued that Marquez' testimony established a lack of serious bodily injury resulting from the

---

[1]Originally appealed to the Second Court of Appeals in Fort Worth, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]We have not been supplied with a reporter's record of the July 12 hearing. The content of that hearing is drawn from comments of the parties and the trial court at the sentencing hearing. Hernandez makes no complaint about the absence of a record of this hearing.

altercation.[3]  The trial court denied the request to withdraw the guilty plea and sentenced Hernandez to fifteen years' confinement.

On appeal, Hernandez contends that:  (1) the trial court erred by denying his request to withdraw his guilty plea[4] and (2) the State engaged in prosecutorial misconduct by commenting on a photograph that was never introduced in evidence.

**I.      Did the Trial Court Err by Denying Hernandez' Request to Withdraw his Guilty Plea?**

Near the end of the punishment hearing, after testimony had concluded and both parties had announced that they had closed on the presentation of evidence in the punishment phase of the trial, the trial court asked for arguments.  Hernandez then commenced his argument by insisting that Marquez' testimony regarding the extent of the injury he sustained was "newly discovered evidence" that Marquez had not suffered serious bodily injury in the fight.  Based on that assertion, Hernandez insisted that he wanted to withdraw his guilty plea.  The trial court denied Hernandez' attempt to withdraw his previously announced plea.

A defendant may withdraw his guilty plea as a matter of right without assigning reason until judgment has been pronounced or the case has been taken under advisement.  *Grant v. State*, 172 S.W.3d 98, 100 (Tex. App.—Texarkana 2005, no pet.); *see Stanton v. State*, 262 S.W.2d 497, 498 (Tex. 1953).  However, when the defendant decides to withdraw his guilty plea

---

[3]A person commits assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another." *See* TEX. PENAL CODE ANN. § 22.01(a) (West Supp. 2013).  Assault becomes the offense of aggravated assault when one of the following two circumstances is present:  (1) the assault causes serious bodily injury or (2) the actor uses or exhibits a deadly weapon.  *See* TEX. PENAL CODE ANN. § 22.02(a) (West 2011); *Landry v. State*, 227 S.W.3d 380 (Tex. App.—Texarkana 2007, pet. denied).

[4]Though Hernandez phrases this point of error in terms of a "motion for new trial," no motion for new trial was filed in this case, and Hernandez failed to move for such during the punishment hearing.

after the trial court takes the case under advisement or pronounces judgment, the decision to accept or reject the withdrawal is within the sound discretion of the trial court. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. [Panel Op.] 1979) (citing *McWherter v. State*, 571 S.W.2d 312 (Tex. Crim. App. [Panel Op.] 1978)). An abuse of discretion is shown only when the trial court's ruling lies outside the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

In *Jackson v. State*, Jackson changed his plea to guilty after the jury was empaneled and sworn. *Jackson*, 590 S.W.2d 514. He was appropriately admonished, he waived his right to a trial by jury, and after certain stipulations were entered into evidence, the court accepted his plea of guilty, but no punishment was assessed at that time, and the case was passed for a presentence investigation. *Id.* A month later, when the case was again called for the assessment of punishment, Jackson sought to withdraw his guilty plea, but the trial court overruled his request and sentenced him. *Id.* The Texas Court of Criminal Appeals held that even though his request came prior to sentencing and the actual pronouncement of judgment, it came "some six weeks after the court had taken the case under advisement"; therefore, the trial court did not abuse its discretion because Jackson's request was not timely. *Id.* at 515. On appeal, Jackson argued that the trial court should have allowed him to withdraw his plea at any point prior to sentencing, but the Texas Court of Criminal Appeals (citing *McWherter v. State*, 571 S.W.2d 312 (Tex. Crim. App. [Panel Op.] 1978)), held that where the defendant decides to withdraw his guilty plea after the trial court takes the case under advisement or pronounces judgment, the withdrawal of such plea is within the sound discretion of the trial court. *Jackson*, 590 S.W.2d at 515.

4

Here, Hernandez entered his open plea of guilty on July 12, 2013, he was appropriately admonished, he waived his right to a trial by jury, and the trial court accepted his plea. Sentencing was delayed by agreement, and the case was continued until August 19, 2013, with the understanding that if Hernandez appeared, the State would recommend a sentence of five years' confinement. However, Hernandez failed to appear, was arrested on October 31, 2013, and was brought to court for the punishment hearing on November 21, 2013.

At the punishment hearing, Marquez and Maria Ruiz (Hernandez' girlfriend who was present when the fight took place) were the only witnesses. Marquez showed the court scars on his elbow from surgery necessitated by the injuries he had sustained in the fight with Hernandez. He also testified that due to his injury, he still suffered from some numbness and pain in his arm and that he was unable to "lift up heavy things" or to completely straighten his arm. He also demonstrated certain movements with his arm, such as straightening, lowering, and raising it over his head. It was Marquez' understanding that his arm movement limitations would be permanent. On cross-examination, Marquez admitted that he no longer received treatment or medication for the injury, that he could still write (although he wrote with the arm that was injured), and that he still had the same job for the same employer that he had before sustaining the injuries.

After testimony was concluded and both sides rested, Hernandez requested to withdraw his guilty plea because Marquez' testimony regarding his injury was "newly discovered evidence" that he failed to suffer "serious bodily injury," and on appeal, he contends that had he been aware of this evidence, he would not have pled guilty. The State points out that "in

5

discovery[,] the medical records for [Marquez were] open to the defense for a long time" and that Hernandez' counsel had been assigned to the case since 2010.

"Serious bodily injury" is bodily injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2013). Here, the trial court stated,

> Let me just say for the record that the Court observed the scar on his elbow. The Court could observe that he could not straighten his arm apparently. The Court could observe that his movement, when he moved his arm towards his body, was not the same as with the left arm. The Court has heard evidence that he is not able to lift weight and that his hand hurts.
>     So it appears to be serious bodily injury to the Court, appears to meet the definition of serious bodily injury. Appears to be a permanent disfigurement and permanent injury to me. So I'm going to deny the request to withdraw the plea at this time.

Hernandez had entered his guilty plea at the first hearing, and the evidence at the second hearing bore solely on the issue of punishment. Both sides had presented all of the evidence pertaining to the issue of punishment that they were going to present. As mentioned above, a court is deemed to have taken a case under advisement after each side has concluded presentation of the evidence on the subject of guilt, the defendant's guilt has been established, and the sole remaining issue is that of punishment. *Scott v. State*, 860 S.W.2d 645, 646 (Tex. App.—Dallas 1993, no pet.). Because the trial court had already taken Hernandez' case under advisement, it was within the court's sound discretion as to whether to allow Hernandez to withdraw his guilty plea.

6

Here, the trial court found that the State met its burden of proving serious bodily injury, and its decision to disallow Hernandez' request to withdraw his guilty plea was within the zone of reasonable disagreement. We find that the trial court was within its discretion to deny Hernandez' request to withdraw his guilty plea, and we overrule this point of error.

## II. Did the State Engage in Prosecutorial Misconduct?

In his second point of error, Hernandez argues that the "State engaged in prosecutorial misconduct by intentionally making comments about a damning photo that was not in evidence[] [and] that it did not attempt to put into evidence . . . ."

During its cross-examination of Ruiz, the State asked Ruiz about Stephanie Lopez, and Ruiz testified that she knew Hernandez "used to talk to her," but that Ruiz had never met Lopez before. The State showed Ruiz two photographs of a woman, and Ruiz denied recognizing her. Then, the following exchange occurred between the State and Ruiz:

> Q.  But you see the shiner on her eye?
>
> A.  I see it.
>
> [Hernandez]:  I object, Your Honor. I object to this testimony about an exhibit not in evidence and it hasn't been acknowledged by the witness.
>
> THE COURT:  I will sustain the objection at this time.

The State asked no more questions about the photographs.

It is well established that an issue raised on appeal must be the same issue raised by motion or objection asserted at trial. TEX. R. APP. P. 33.1(a); *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (nothing preserved for review if issue on appeal does not comport with objection at trial). Here, Hernandez objected on evidentiary grounds, received a favorable ruling

from the trial court, and was granted all the relief he requested. Hernandez never raised the issue of prosecutorial misconduct in the trial court. Therefore, this point of error was not preserved for our review,[5] and we overrule the point of error.

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     June 20, 2014
Date Decided:      July 23, 2014

Publish

---

[5]Even if Hernandez' objection were sufficient to preserve this point of error, the activity of which he complains fails to meet the standard for prosecutorial misconduct. While there is no general test for prosecutorial misconduct and the issue should be determined on a case-by-case basis, existing caselaw has established three factors for analysis: (1) whether the defendant objected to the conduct of the prosecutor; (2) whether the prosecutor deliberately violated an express court order; and (3) whether the prosecutorial misconduct was so blatant as to border on being contumacious. *Stahl v. State*, 749 S.W.2d 826, 831 (Tex. Crim. App. 1988). Here, although Hernandez objected to the State's questions regarding a photograph not in evidence, Hernandez did not then complain that the conduct rose to the level of prosecutorial misconduct, and the line of questioning neither violated the court's orders nor bordered on being contumacious.

8